**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**SHAWN THOMAS,**

    **Plaintiff,**

                                    **Civil Action 2:10-cv-0152**
    **v.**                               **Judge James L. Graham**
                                    **Magistrate Judge Elizabeth P. Deavers**

**MR. McDOWELL,** *et al.*,

    **Defendants.**

**REPORT & RECOMMENDATION**

Plaintiff, Shawn Thomas, an Ohio inmate proceeding without the assistance of counsel, brings this civil rights action under 42 U.S.C. § 1983 against Defendants, employees, and former employees of the Ohio Department of Rehabilitation and Correction ("ODRC"), alleging that Defendants violated his Eighth and First Amendment rights. This matter is before the Court for consideration of Plaintiff's Motion for Summary Judgment. (ECF No. 115.) Also before the Court is Defendants Eitel and Pennington's Motion for Summary Judgment.[1] (ECF No. 99.) For the reasons that follow, is **RECOMMENDED** that Plaintiff's Motion be **DENIED** and Defendant's Motion be **GRANTED**.

---

[1] Defendant Cook also moved for summary judgment, but the Court's termination of him as a Defendant in connection with the initial screen renders his summary judgment arguments moot.

**I.**

This action arises from events taking place on March 16, 2009, and April 3, 2009. Plaintiff commenced this action on February 19, 2010, and filed an Amended Complaint on December 12, 2011.  (ECF Nos. 1 and 71.)  Following an initial screen of Plaintiff's Amended Complaint pursuant to 28 U.S.C. §§ 1915(e) and 1915A, the Court permitted Plaintiff proceed on his excessive force claims under 42 U.S.C. § 1983 against Defendants Spohn, Pennington, and Eitell, his retaliation claims against Defendants Pennington and Eitell, and his Eighth Amendment cruel and unusual punishment claim against Defendant Young.  (ECF No. 103.)

Plaintiff now moves for summary judgment on the remaining claims.  Defendants Eitel and Pennington have likewise moved for summary judgment.  Defendants Eitel and Pennington maintain that Plaintiff's claims against them should be dismissed for failure to exhaust administrative remedies.  Alternatively, Defendants Eitel and Pennington posit that no reasonable trier of fact could find that they utilized excessive force or retaliated against Plaintiff. They further posit that they are entitled to qualified immunity.  The parties' versions of the events are highly disputed.

**A.     March 16, 2009 Incident**

On March 16, 2009, Plaintiff was placed into segregation.  According to Plaintiff, while in the segregation cage, Defendants Spohn and Young harassed and physically threatened him, forced him to stand in the corner of the cage, refused to let him sleep all night even though they

knew he was on sleeping medications, and refused him bathroom privileges.[2]  Upon release, Defendant Spohn handcuffed him and guided him to the wall outside of the cage.  Plaintiff represents that Defendant Spohn then forced him against the wall using his arm and body to push into Plaintiff's neck and back while continuing to harass him.  Defendant Spohn then released Plaintiff and ordered him to pick his pants up off the floor.  When Plaintiff asked how he was to do this with his hands cuffed behind his back, Defendant Spohn told him that he did not "give a F—" but that he had better grab them.  (Pl.'s Mot. for Summ. J. at 2, ECF No. 100.)  As Plaintiff bent down to pick up his pants, Defendant Spohn slammed him to the floor while pulling and twisting his handcuffs.  Before exiting segregation, Defendant Spohn again pinned Plaintiff up against a wall and threatened him.  Plaintiff represents that he sustained severe bruising on his wrists and arms as a result of Defendant Spohn's use of force.

      Defendants dispute Plaintiff's version of the facts.  Defendants concede that Plaintiff was cooperative and further acknowledge that video footage shows that Defendant Spohn placed his arm against Plaintiff's neck to pin him to the wall.  Defendant Spohn, however, maintains that the force he utilized was minimal and that he employed said force in order to stabilize Plaintiff while he uncuffed him.  (Spohn Statement 23, ECF No. 100-3.)  He also denies the remainder of Plaintiff's allegations.  (*Id*. at 19–27; Spohn's Answers to Pl.'s Ints. 1–3, ECF No. 100-6.)  Defendant Young likewise denies Plaintiff's allegations.  (Young's Answers to Pl.'s Ints. 1–2, ECF No. 100-6; Young Statement 29–33, ECF No. 100-3.)

---

[2]Plaintiff sets forth these facts in his Motion for Summary Judgment.  (ECF No. 100.)  He declares, under penalty of perjury, that the factual summary provided in his Motion is true to the best of his knowledge.  (*Id*. at 53.)  As such, his factual assertions are properly supported for purposes of Federal Rule of Civil Procedure 56(c).  *See* 28 U.S.C. § 1746 (permitting written, unsworn declaration subscribed in proper form as true under penalty of perjury to substitute for an affidavit).

Plaintiff timely filed an Informal Complaint Resolution and Notification of Grievance regarding the March 16, 2009 incident, prompting the Institutional Inspector to conduct an investigation. (ECF No. 99-5.) In addition, ODRC's Use of Force Committee convened to investigate Plaintiff's allegations of force. Upon review of the investigation reports, the testimonies of those involved, and the video evidence, the Use of Force Committee concluded that under the "circumstances and manner in which [Defendant Spohn utilized] force," such force was "unjustified, inappropriate, and excessive." (April 29, 2009 Report 3, ECF No. 100-3.) The Committee recommended continuation of the disciplinary process for Defendants Spohn and Young. The Institutional Inspector found sufficient evidence to support Plaintiff's allegations of force, but insufficient evidence of inappropriate comments and threats. (April 3, 2009 Disp. of Grievance, ECF No. 99-5.) He granted Plaintiff's grievance and forwarded his findings to the prison warden for review and determination further action. (*Id.*) Upon appeal, the Chief Inspector affirmed the Institutional Inspector's grant of Plaintiff's grievance. (Dec. 15, 2009 Dec. of Chief Inspector, ECF No. 99-5.) Ultimately, Defendant Spohn was terminated from his position of corrections officer as a result of the incident. (Spohn's Answers to Pl.'s Ints. 2, ECF No. 100-6; Notice of Disciplinary Action, ECF No. 129-1.)

**C.  April 3, 2009 Incident**

According to Plaintiff, on April 3, 2009, Defendants Pennington and Eitel delivered the Institutional Inspector's disposition of grievance to him and commented that it was the first time they had ever seen an inmate's grievance granted. Later that day, Defendant Eitel demanded that Plaintiff dump out hot water that he had obtained from the restroom. As Plaintiff dumped his water, Defendant Eitel pinned him up against the wall and escorted him into a room without a camera. Defendants Eitel and Pennington ordered Plaintiff to stand against the wall. As

4

Defendant Pennington began to handcuff Plaintiff, Defendant Eitel shouted, "he's resisting!" (Pl.'s Mot. for Summ. J. 5, ECF No. 100.)  Defendants proceeded to slam Plaintiff to the floor, place a knee in his back, and spray mace in his face two or three times.  (*Id*.)  While spraying the mace, Defendant Eitel said, "Yeah you little b—, file a grievance on this, and I bet you don't win!"  (*Id*.)

Defendants Eitel and Pennington dispute Plaintiff's version of the facts.  Defendant Eitel represents that he observed Plaintiff violating a prison rule that prohibited inmates from taking cups and bowls into restrooms for sanitary reasons.  (Eitel Decl. ¶¶ 3–4, ECF No. 99-6.) Because Plaintiff shouted obscenities at Defendant Eitel and ignored his orders, Defendant ordered Plaintiff to go to the day room.  (*Id*. at ¶¶ 6-7.)  Defendants Eitel and Pennington maintain that after ordering Plaintiff to stand against the wall to be handcuffed, Plaintiff shouted obscenities, pushed off the wall, started to spin around, and struck Defendant Eitel's right leg with the heel of his boot.  (*Id*. at ¶¶ 7–11; Pennington Decl. ¶¶ 3–15, ECF No. 111-1.) Defendants Pennington and Eitel then took Plaintiff to the floor.  Plaintiff continued to refuse orders to surrender his left arm, prompting Defendant Eitel to administer a short burst of pepper spray.  (*Id*.)  Plaintiff then surrendered his arm.  (*Id*.)  Defendant Eitel sustained a contusion on his right shin and suffered from stiffness in his left knee as a result of the incident.  (Eitel Decl. ¶ 13, ECF No. 99-6.)

The next day, on April 4, 2009, Plaintiff filed an Informal Complaint Resolution against Defendants Pennington and Eitel.  (ECF No. 99-5.)  On April 9, 2009, under "Action Taken" on the grievance form, the prison staff member indicated that Plaintiff was not allowed to have cups in the restroom and that he should have complied with the officer's orders.  (*Id*.)  That same day, Plaintiff was transferred from the Madison Correctional Facility to the Lebanon Correctional

5

Facility.  On December 17, 2009, several months after the April 23, 2009 deadline, Plaintiff filed a Notification of Grievance regarding the April 3, 2009 incident.  Plaintiff attached a letter to this Notification of Grievance in which he alleged that he had timely filed the Notification of Grievance and speculated that the officer he gave it to never turned it in.  (*Id.*)  The Institutional Inspector declined to take any action, noting that review of Plaintiff's grievance history revealed that he had failed to timely submit his grievance.  (Dec. 28, 2009 Disp. of Grievance, ECF No. 99-5.)  Plaintiff appealed, and the Chief Inspector affirmed the Institutional Inspector's denial, declining to take any further action.  (Feb. 12, 2010 Dec. of Chief Inspector, ECF No. 99-5.)  In his Memorandum in Opposition, Plaintiff concedes that he failed to timely file a Notification of Grievance, but maintains that Defendants Pennington and Eitel intimidated and "verbally deterred" him from timely exhausting his remedies.  (Pl.'s Mem. in Opp. 2, ECF No. 118.)  Plaintiff adds that he proceeded to exhaust his remedies once he was no longer scared and had learned Defendants' names.  (*Id*. at 3.)

## II.

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party."  *Stansberry v. Air Wisc. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the court may "consider the fact undisputed for purposes of the motion").

"Once the moving party meets its initial burden, the nonmovant must 'designate specific

6

facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn*, No. 10–3110, 2011 WL 4469612, at *3 (6th Cir. Sept. 28, 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record").  "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

### III.

**A.     Defendant's Motion for Summary Judgment**

Defendants ask the Court to dismiss Plaintiff's § 1983 excessive force and retaliation claims against Defendants Eitel and Pennington on the grounds that he failed to properly satisfy the exhaustion requirements set forth in the Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e(a).

"A prisoner's failure to exhaust his intra-prison administrative remedies prior to filing suit 'is an affirmative defense under the PLRA . . . .'" *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) (quoting *Jones v. Bock*, 549 U.S. 199, 216 (2007)).  Defendants bear the burden of proof on the affirmative defense of exhaustion. *Napier v. Laurel County, Ky.*, 636 F.3d 218, 225 (6th Cir. 2011) (citations omitted) ("[F]ailure to exhaust administrative remedies under the

7

PLRA is an affirmative defense that must be established by the defendants."). "Summary judgment is appropriate only if defendants establish the absence of a genuine dispute as to any material fact regarding non-exhaustion." *Surles*, 678 F.3d at 455. "When a prisoner's complaint contains a combination of exhausted and unexhausted claims, courts are to dismiss the unexhausted claims but retain and address the exhausted claims." *Reynolds-Bey v. Harris*, 428 F. App'x 493, 500 (6th Cir. 2011) (citing *Jones*, 549 U.S. at 220–24).

Under 42 U.S.C. § 1997e(a), as amended by the PLRA, "a prisoner confined in any jail, prison, or other correctional facility" may not bring an action challenging "prison conditions" under 42 U.S.C. § 1983 "or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Jones*, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." (citation omitted)). This mandatory exhaustion requirement applies to all lawsuits relating to prison conditions, regardless of the nature of the wrong or the relief sought. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "Exhaustion" under the PLRA means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). To properly exhaust, prisoners must "tak[e] advantage of each step the prison holds out for resolving the claim internally and . . . follow the 'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010); *Jones*, 549 U.S. at 217–18 (noting that proper exhaustion requires "[c]ompliance with prison grievance procedures").

Ohio has established a procedure for resolving inmate complaints. Ohio Admin. Code § 5120–9–31. To properly exhaust a claim seeking relief "regarding any aspect of institutional life that directly and personally affects the [inmate]," an inmate at an ODRC facility must comply

with its three-step grievance system. *Id*. For the first step, the inmate must submit an informal complaint to the staff member or to the direct supervisor of the staff member or to the department most directly responsible over the subject matter with which the inmate is concerned. Ohio Admin. Code § 5120–9–31(K)(1). If the inmate is not satisfied with the results at the first step, he may take the second step by filing a formal grievance with the inspector of institutional services at the prison where he is confined. Ohio Admin. Code § 5120–9–31(K)(2). That inspector will investigate the matter and issue a written response to the inmate's grievance within fourteen calendar days of receipt. *Id*. If the inmate is still dissatisfied, he may pursue the third step, which is an appeal to the office of the Chief Inspector of ODRC. Ohio Admin. Code § 5120–9–31(K)(3). An inmate does not exhaust his remedies under § 5120-9-31 until he has received a decision in an appeal to the office of the Chief Inspector. If an inmate has a grievance against the warden or inspector of institutional services, he must file it directly to the office of the Chief Inspector, whose decision is final. Ohio Admin. Code § 5120–9–31(M).

Defendants Eitel and Pennington have satisfied their burden of proving that Plaintiff failed to exhaust his administrative remedies. As set forth above, Plaintiff was required to "properly exhaust" his claims, which required him to follow the "critical procedural rules" of ODRC's grievance process. *See Reed-Bey*, 603 F.3d at 324. ODRC's rules relating to the timeliness of a grievance certainly constitute "critical procedural rules." *Vandiver v. Correctional Med. Servs., Inc.*, 326 F. App'x 885, 889 (6th Cir. 2009) (identifying "timeliness" as a critical procedure that an inmate must comply with in order to properly exhaust a claim). Plaintiff's December 17, 2009 submission of a Notification of Grievance ("NOG") with the Institutional Inspector was untimely by nearly seven months.

As set forth above, Plaintiff concedes that he failed to comply with the prison procedural

9

rules regarding timeliness, but asks the Court to excuse his failure because Defendants Pennington and Eitel "verbally deterred" him from timely filing his notification of grievance. (Pl.'s Mem. in Opp. 2, ECF No. 118.)  The PLRA, however, "does not excuse exhaustion for prisoners under imminent danger of serious physical injury." *Arbuckle v. Bouchard*, 92 F. App'x 289, 291 (6th Cir. 2004);  *Ramos v. Ganshemer*, No. 1:12-cv-132, 2013 WL 775353, at *6 (N.D. Ohio Feb. 26, 2013) ("[C]ourts have not recognized a fear of retaliation as an exception to the PLRA's exhaustion requirement.").  Even if fear of retaliation would excuse an inmate's duty to exhaust his administrative remedies, it is unnecessary to address the issue here because Plaintiff has failed to allege facts in support of his conclusion that he feared for his safety. *Boyd v. Corrections Corp. of Am.*, 380 F.3d 989, 997–98 (6th Cir. 2004) (refusing to consider inmate's contention that he failed to exhaust his remedies because "he feared for his safety," explaining that the inmate had failed to "describe with specificity the factual basis for his fear").  Further, the fact that Plaintiff proceeded to file an Informal Complaint Resolution the day after the incident and that he was subsequently transferred to a different institution thereby eliminating potential contact with Defendants Pennington and Eitel, bely his general allegations of fear.

Thus, the Undersigned **RECOMMENDS** Plaintiff's claims against Defendants Pennington and Eitel be **DISMISSED WITHOUT PREJUDICE** for failure to properly exhaust his administrative remedies.  See *Boyd*, 380 F.3d at 994 (citing *Knuckles El v. Toombs*, 215 F.3d 640 (6th Cir. 2000)) ("A dismissal under § 1997e should be without prejudice.")  The conclusion that Plaintiff failed to exhaust his administrative remedies obviates the need for consideration of Defendants' alterative bases for summary judgment.

**B.     Plaintiff's Motion for Summary Judgment**

With regard to Plaintiff's remaining § 1983 claims against Defendants Spohn and Young,

viewing the facts in a light most favorable to Defendants, the Undersigned concludes that Defendants have met their burden of establishing that genuine issues of material fact exist precluding an entry of judgment in Plaintiff's favor.

"The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the 'unnecessary and wanton infliction of pain.'" *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "Whether [a defendant's] alleged conduct constitute[s] excessive force in violation of the Eighth Amendment depends on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id*. (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). Relevant factors in this analysis include "'the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *United States v. Bunke*, 412 F. App'x 760, 765 (6th Cir. 2011). A claimant need not establish a "significant injury" to prove an excessive-force violation. *Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010). The Supreme Court, however, has cautioned that the extent of the injury is still meaningful in the analysis:

> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. *Id*. at 7, 112 S.Ct. 995. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Ibid*. (quoting *Whitley*, 475 U.S. at 321). The extent of injury may also provide some indication of the amount of force applied. As we stated in *Hudson*, not "every malevolent touch by a prison guard gives rise to a federal cause of action." 503 U.S. at 9. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Ibid*. (some internal quotation marks omitted). An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Ibid*. (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)).

*Id*.

Here, the parties' version of the events that took place on March 16, 2009 are highly disputed. These facts are clearly material. Defendants have met their burden of demonstrating that genuine issues of fact exist regarding whether Defendant Young engaged in any of the alleged behavior and whether Defendant Spohn maliciously and sadistically applied force to cause harm to Plaintiff. It is, therefore, **RECOMMENDED** that Plaintiff's Motion for Summary Judgment (ECF No. 100) be **DENIED**.

## IV.

In sum, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (ECF No. 99) be **GRANTED** and that Plaintiff's claims against Defendants Eitel and Pennington be **DISMISSED WITHOUT PREJUDICE** for failure to comply with the PLRA's exhaustion requirements. It is further recommended that Plaintiff's Motion for Summary Judgment (ECF No. 100) be **DENIED**. If the Report and Recommendation is adopted, only Plaintiff's § 1983 excessive force claim against Defendants Spohn and his § 1983 Eighth Amendment cruel and unusual punishment claim against Defendant Young remain.

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED.**


Date:  August 5, 2013                                  /s/ *Elizabeth A. Preston Deavers*
                                                                         Elizabeth A. Preston Deavers
                                                                         United States Magistrate Judge